IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>v.<br><br>The Washington University,<br><br>Defendant. | ) | Case No. 4:26-cv-1289<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**Nature of the Action**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to Charging Party Amega Thaier, who was aggrieved by such practices. As described with greater particularity below, Defendant Washington University discharged Thaier in retaliation for her opposition to alleged race discrimination, filing a Charge of Discrimination with the Commission, and participation in the Commission's investigation of her charge.

**Jurisdiction and Venue**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in this Court pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Missouri.

**Parties**

3. Plaintiff, the Equal Employment Opportunity Commission ("Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. Defendant, The Washington University ("Washington University"), is a Missouri corporation headquartered and doing business in the City of St. Louis, Missouri, and has continuously had at least fifteen employees.

5. At all relevant times, Washington University has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

**Administrative Procedures**

6. More than thirty days prior to the institution of this lawsuit, Amega Thaier filed a charge with the Commission alleging violations of Title VII by Washington University.

7. On June 22, 2026, the Commission issued to Washington University a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Washington University to join with the Commission in

informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Washington University to provide Washington University the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Washington University a conciliation agreement acceptable to the Commission.

10. On July 1, 2026, the Commission issued Washington University a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## Statement of Facts

12. In August 2021, Amega Thaier began her employment with Washington University as a Program Manager in the Alvin J. Siteman Cancer Center (SCC), part of the Washington University School of Medicine in St. Louis, Missouri.

13. Thaier had been recruited and hired by Nicholas Fisher, SCC Executive Director of Research and Business Administration, and Courtney Beers, SCC Director of Research Operations.

14. Thaier reported to Fisher and Beers during her employment at SCC.

15. In 2024, Fisher and Beers promoted Thaier to the position of Senior Program Manager.

16. In June 2024, Fisher emailed the SCC research administration team, including Thaier, that they would participate in two training sessions provided by the Washington University School of Medicine's Office of Diversity, Equity, and Inclusion (ODEI) on the topics of "How Racism Harms" and "Anti-Racism Community Discussions".

17. Fisher's email stated that the training sessions were "mandatory for all staff."

18. On October 9, 2024, in preparation for the "How Racism Harms" discussion session scheduled for early November 2024, ODEI sent an online survey to the expected participants from the SCC research administration team, which noted that participants "will spend time in shared racial identity spaces" during the session and asked them to self-identify as either White or BIPOC (Black, Indigenous, People of Color).

19. Thaier, who is Black, selected "BIPOC" as her racial identity and then emailed ODEI staff expressing concern about how "shared racial identity spaces" would work given that she was the only "BIPOC" person on the SCC research administration team.

20. After exchanging multiple emails with ODEI staff, Thaier understood that she would participate in the "How Racism Harms" training session with the rest of the SCC research administration team, but that there would be no "shared racial identity spaces" activities during the training.

21. The "How Racism Harms" training session for the SCC research administration team was postponed from early November 2024 to January 22, 2025, and changed from being in-person to remote via Zoom.

22. In January 2025, ODEI staff sent Zoom invitations to the SCC research administration team, including Thaier, for the "How Racism Harms" training session.

23. ODEI staff sent the Zoom invitation to Thaier knowing that Thaier did not want to participate in a "shared racial identity spaces" activity.

24. Thaier accepted the Zoom invitation and joined the January 22, 2025, "How Racism Harms" training session believing, based on her emails with ODEI staff, that the session would not include a "shared racial identity spaces" activity.

25. During the January 22, 2025, "How Racism Harms" training session, the ODEI facilitator separated the SCC research administration team participants into Zoom breakout rooms for "shared racial identity spaces" based on race.

26. Despite knowing that Thaier did not want to participate in a "shared racial identity spaces" activity, the ODEI facilitator placed Thaier, the only non-White person on the SCC research administration team, in a Zoom room by herself, where she remained alone for several minutes.

27. After several minutes, a different ODEI staff member joined Thaier in the breakout room. After a brief discussion, Thaier exited the Zoom meeting.

28. Later in the day on January 22, 2025, Thaier sent an email to ODEI staff, copying her supervisors Fisher and Beers, with the subject line, "Feedback on

Today's DEI Training." Thaier described how upsetting the experience was for her: "Being the only Black person in the training, I was isolated and put in a position that felt profoundly alienating and cruel. It wasn't just uncomfortable—it was dehumanizing. In 2025, in this political and social climate, the only black/BIPOC person was literally and figuratively segregated and asked to leave the 'room.' It's egregious." Thaier reminded them that she had "flagged this issue months ago when the activity was initially scheduled, and the decision was made to avoid it for this exact reason." Thaier also urged them to engage in a comprehensive review of policies and processes for planning and delivering their DEI sessions.

29. ODEI staff responded to Thaier by email on January 22 and 30, 2025. Thaier believed the responses from ODEI staff did not sufficiently acknowledge the harm she experienced when, during the training, she was separated from the rest of her team because of her race.

30. On January 31, 2025, Thaier emailed a written internal complaint to Washington University's Office of Institutional Equity (OIE), complaining that ODEI "has created an ecosystem that delivers training in a manner inconsistent with its mission and the university's commitment to diversity, equity, and inclusion" and that "subsequent racelighting by [ODEI staff] is unacceptable."

31. Both before and after Thaier filed her internal complaint with OIE, Fisher and Beers expressed support of her decision to escalate her complaint within Washington University.

32. From approximately February to June 2025, Gillian Lawson (then Boscan), OIE's Director of Investigations, conducted an internal investigation into Thaier's complaint.

33. OIE marked its investigation "resolved", but there was no formal resolution.

34. After the January 2025 incident with ODEI, Thaier's work as SCC Senior Program Manager continued as normal, and Fisher and Beers continued to give her consistent positive feedback regarding her work.

35. In May 2025, Thaier successfully completed Washington University's Emerging Leaders Program (ELP), having entered that program as part of the 2024 Cohort. The ELP is designed for staff to build skills to have a more intentional approach to leadership in their sphere of influence through hands-on collaboration with others.

36. In June 2025, Fisher and Beers tasked Thaier with creating and leading what came to be known as the Clinical Trials Initiative for developing new Prevention & Control clinical trials. In that role, Thaier coordinated with investigators to identify and then facilitate implementation of new clinical trials at SCC, and she was successful in doing so.

37. Also in June 2025, Beers told Thaier that she wanted her to be actively involved throughout FY26 in the preparation of SCC's renewal application for the National Cancer Institute (NCI) Cancer Center Support Grant (CCSG).

38. In Thaier's June 11, 2025, Performance Evaluation, Beers gave her the highest "Exceptional Contributor" rating and stated: "I intend to partner with Meg in coming months to identify ways for her to assume more of the high-level SCC workload and—to the extent possible—to focus the majority of additional responsibilities on more mission-critical work. . . . We will be focusing a significant amount of time and energy in FY26 on the CCSG renewal. The grant application will be all new for Meg but I've yet to see a challenge that she can't handle. I look forward to working with Meg on this important (and critical) task."

39. On July 11, 2025, Thaier signed and filed a Charge of Discrimination with the Commission, alleging that Washington University had subjected her to unlawful discrimination based on race in violation of Title VII.

40. On or about July 20, 2025, the Commission provided Washington University with notice of Thaier's Charge of Discrimination.

41. On or about July 30, 2025, Thaier told Beers that she had filed a Charge of Discrimination with the Commission.

42. Sometime after Thaier told Beers about her EEOC Charge, Thaier began to sense a change in Beers and Fisher. At some point in August 2025, when Beers shifted some of Thaier's duties to a coworker, Thaier told Beers, "It feels like I'm moving from the driver's seat to the passenger seat."

43. On August 25, 2025, Fisher told Thaier that he and Beers were working on a new strategy for funding the Clinical Trials Initiative, which would allow the initiative to be "long term and sustainable."

44. On August 27, 2025, Washington University submitted to the Commission a written response to Thaier's Charge of Discrimination, claiming that "a series of events led to Ms. Thaier inadvertently receiving an invitation to the [How Racism Harms] program" and that her "charge is without merit."

45. From approximately September 4, 2025, through October 21, 2025, Thaier was out of work on approved medical leave, returning to work on October 22, 2025.

46. On October 1, 2025, while Thaier was still out on approved medical leave, Fisher sent an email to all SCC staff regarding a recent message from the University Chancellor to all employees about financial difficulties and the possibility of eliminating positions. Fisher told SCC staff that SCC was in a different position than the rest of the university because it has different and stable funding, and he assured them that, "[o]ur budget in Siteman is as stable and secure as ever. If new challenges come, we will adapt, but I foresee no changes to our operations on the horizon. NO staffing changes, reductions or adjustments are even being considered, let alone planned, in our department."

47. When Thaier returned to work at the end of October 2025, Fisher and Beers decided to terminate Thaier.

48. On November 12, 2025, Beers told Thaier that there was not enough work for her and that she should begin looking for other opportunities because her position would eventually be eliminated.

49. On November 20, 2025, Fisher emailed Thaier that her position was being eliminated effective December 1, 2025, stating that the work she had previously been managing had either been transitioned to another employee or was being de-prioritized due to the department switching focus to preparing SCC's renewal application for the NCI CCSG.

50. On November 25, 2025, Thaier signed and filed an Amended Charge of Discrimination with the Commission regarding Washington University's retaliatory termination of her employment.

51. Washington University terminated Thaier's employment effective December 1, 2025.

52. Upon information and belief, shortly after Washington University terminated Thaier's employment, Fisher and Beers promoted another SCC employee to the Senior Project Manager position. That employee had not complained about race discrimination or filed a Charge of Discrimination with the Commission.

**Statement of Claim**

**Retaliatory Discharge**

53. The Commission repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

54. Washington University engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), when it discharged Thaier in retaliation for opposing alleged race discrimination, filing a Charge of

Discrimination with the Commission, and / or participating in the Commission's investigation of her charge.

55. The unlawful employment practices described above deprived Thaier of equal employment opportunities and otherwise adversely affected her status as an employee in violation of Title VII.

56. The unlawful employment practices described above were done intentionally and with malice or with reckless indifference to Thaier's federally protected rights.

57. As a direct and proximate result of Washington University's unlawful conduct, Thaier suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, humiliation, inconvenience, and loss of enjoyment of life.

## **Prayer for Relief**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Washington University, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from retaliating against employees who engage in activity protected by Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a).

B. Order Washington University to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who engage in activity protected by Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), and which eradicate the effects of its past and present unlawful employment practices.

C. Order Washington University to make Thaier whole by providing back pay and benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Washington University to make Thaier whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and other out-of-pocket expenses, in amounts to be determined at trial.

E. Order Washington University to make Thaier whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional distress, pain and suffering, anxiety, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

F. Order Washington University to pay Thaier punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## **Jury Trial Demand**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

ANDREA G. BARAN, 46520(MO)
Regional Attorney
Equal Employment Opportunity Commission
St. Louis District Office
1222 Spruce St., Rm. 8.100
St. Louis, MO 63103
Phone: (314) 798-1914
Email: andrea.baran@eeoc.gov

LAUREN W. JOHNSTON, 22341(OK)
Assistant Regional Attorney
Equal Employment Opportunity Commission
Oklahoma City Area Office
215 Dean A. McGee Ave., Ste. 524
Oklahoma City, OK 73102
Phone: (405) 666-0379
Email: lauren.johnston@eeoc.gov

*/s/ Luke R. Hertenstein*
LUKE R. HERTENSTEIN, 23809(KS)
Senior Trial Attorney
Equal Employment Opportunity Commission
Kansas City Area Office
400 State Ave., Ste. 905
Kansas City, KS 66101
Phone: (913) 359-1812
Email: luke.hertenstein@eeoc.gov

ATTORNEYS FOR PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION