UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

AMEGA THAIER,

Plaintiff-Intervenor,

v.

THE WASHINGTON UNIVERSITY,

Defendant,

ERIN STAMPP, JERAMIA ORY, and NICHOLAS FISHER,

Defendants.

Case No. 4:26-cv-1289

**JURY TRIAL DEMANDED**

**COMPLAINT IN INTERVENTION**

1. Amega Thaier ("Plaintiff-Intervenor" or "Ms. Thaier"), by and through her undersigned attorneys, brings this Complaint in Intervention pursuant to Federal Rule of Civil Procedure 24 and 42 U.S.C. § 2000e-5(f)(1) against Defendant The Washington University ("Washington University"), and Defendants Erin Stampp ("Stampp"), Jeramia Ory ("Ory"), and Nicholas Fisher ("Fisher") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

2. This action arises from Defendants' unlawful racial discrimination, creation of a hostile work environment, and retaliation in violation of federal and Missouri law.

3. The Equal Employment Opportunity Commission ("Commission") has commenced this action against Washington University on Ms. Thaier's behalf following its determination that reasonable cause exists to believe Washington University violated Title VII. Ms. Thaier intervenes to assert additional claims and to seek individual relief beyond the scope of the Commission's action, including claims against additional Defendants.

4. In August 2021, Washington University hired Ms. Thaier, a Black woman, to serve as a Program Manager at the Alvin J. Siteman Cancer Center ("SCC"). In January 2025, during a mandatory diversity, equity, and inclusion ("DEI") training program, Washington University segregated Ms. Thaier from her colleagues based solely on her race, placing her in an isolated room while her white colleagues participated together in another. After Ms. Thaier reported the discrimination internally and filed a charge with the Commission, Washington University terminated her employment.

5. Defendants Stampp and Ory, employees of Washington University's Office of Diversity, Equity, and Inclusion ("ODEI"), designed and facilitated the training that segregated Ms. Thaier because of her race. Defendant Fisher, Ms. Thaier's Executive Director, later terminated her employment while the Commission was

actively investigating her Charge, and promoted a white female colleague to Ms. Thaier's title.

6. Ms. Thaier brings this Complaint in Intervention against Washington University and the individual Defendants to vindicate her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 1981; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.; and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq*.

7. Ms. Thaier seeks compensatory damages, punitive damages, back pay, front pay, equitable relief, attorneys' fees and costs, and all other relief to which she is entitled.

## PARTIES

8. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

9. Plaintiff-Intervenor Amega Thaier is an adult citizen and resident of St. Louis County, Missouri.

10. Defendant Washington University in St. Louis is a private university with its principal place of business at One Brookings Drive, St. Louis, Missouri 63130. Washington University employs more than 500 employees and qualifies as an employer under Title VII, 42 U.S.C. § 2000e(b).

11. Defendant Erin Stampp is an individual who, at all times relevant to this Complaint, was employed by Washington University as Director of Programming and Professional Development in the ODEI at the Washington University School of Medicine. Upon information and belief, Defendant Stampp resides in the State of Missouri.

12. Defendant Jeramia Ory is an individual who, at all times relevant to this Complaint, was employed by Washington University as a member of the ODEI team. Upon information and belief, Defendant Ory resides in the State of Missouri.

13. Defendant Nicholas Fisher is an individual who, at all times relevant to this Complaint, was employed by Washington University as Executive Director of Research and Business Administration at SCC. Upon information and belief, Defendant Fisher resides in the State of Missouri.

## ADMINISTRATIVE PROCEDURES

14. More than thirty days prior to the institution of this lawsuit, Ms. Thaier timely dual-filed a Charge of Discrimination with the Commission (Charge No. 560-2025-01453) and the Missouri Commission on Human Rights ("MCHR") (Charge No. FE-11/25-40524), alleging violations of Title VII and the MHRA by Washington University.

15. On November 25, 2025, Ms. Thaier dual-filed an Amended Charge of Discrimination with the Commission and the MCHR, addressing her retaliatory discharge.

16. On May 19, 2026, the MCHR issued Ms. Thaier a Notice of Right to Sue regarding Charge No. FE-11/25-40524. This action is filed within ninety days of Ms. Thaier's receipt of the Notice of Right to Sue, as required by Mo. Rev. Stat. § 213.111.1. *See* Exhibit A, MCHR Right to Sue Letter.

17. On June 22, 2026, the Commission issued Washington University a Letter of Determination finding reasonable cause to believe Washington University violated Title VII. *See* Exhibit B, EEOC Letter of Determination.

18. The Commission invited Washington University to conciliate Ms. Thaier's Charge in an effort to eliminate the unlawful employment practices and provide appropriate relief.

19. The Commission was unable to secure a conciliation agreement from Washington University.

20. On July 1, 2026, the Commission issued to Washington University a Notice of Failure of Conciliation. *See* Exhibit C, EEOC Notice of Unsuccessful Conciliation and Case Forwarding.

21. All conditions precedent to the institution of this lawsuit have been fulfilled.

**<u>JURISDICTION AND VENUE</u>**

22. This Court has subject matter jurisdiction over Ms. Thaier's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and over her Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

23. Ms. Thaier intervenes in this action as of right under Federal Rule of Civil Procedure 24(a)(1) and 42 U.S.C. § 2000e-5(f)(1), as the person aggrieved and on whose charge of discrimination the Commission's action is based.

24. The Court has supplemental jurisdiction over Ms. Thaier's state-law claims pursuant to 28 U.S.C. § 1367, as her state claims arise out of the same case or controversy as her federal claims.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to Ms. Thaier's claims occurred in the Eastern Division of the Eastern District of Missouri, and Defendants reside in this District.

## FACTUAL BACKGROUND

### I. Ms. Thaier's Employment and Performance

26. Washington University employed Ms. Thaier from approximately August 2021 through December 1, 2025, as a Program Manager at SCC.

27. Ms. Thaier was promoted to Senior Program Manager in October 2024, a title she held at the time of her termination.

28. The SCC is a National Cancer Institute-designated comprehensive cancer center affiliated with Washington University School of Medicine and Barnes-Jewish Hospital.

29. At all relevant times, Ms. Thaier's employer was Washington University.

30. She was a full-time, exempt employee with an annual salary of approximately $104,000.

31. Ms. Thaier holds a Master of Science in Nursing.

32. Throughout her tenure, Ms. Thaier consistently performed her duties at a high level.

33. Her supervisors, including Defendant Fisher and Courtney Beers, consistently praised her work and provided favorable evaluations.

34. In Ms. Thaier's June 11, 2025, Performance Evaluation, Beers gave her the highest possible rating of "Exceptional Contributor," stated her intention to assign Ms. Thaier "more mission-critical work" in fiscal year 2026, and wrote: "I've yet to see a challenge that she can't handle."

35. By the summer of 2025, Fisher was actively discussing Ms. Thaier's pathway to promotion.

36. At no time during her employment was Ms. Thaier subject to any disciplinary action, placed on any performance improvement plan, or given any negative performance evaluation.

37. In 2024, Ms. Thaier was selected to participate in Washington University's Emerging Leaders Program—a competitive nine-month professional development program designed to enhance participants' leadership capabilities, resilience, and influence.

38. Ms. Thaier completed the Emerging Leaders Program in May 2025.

## II. Racially Segregated Training

39. In October 2024, Washington University's ODEI, led by Defendant Stampp, began planning a mandatory DEI leadership training for certain SCC employees.

40. As part of the training, ODEI planned to use "shared identity spaces" or "racial caucusing," in which participants would be separated into groups based on race.

41. Although originally scheduled as an in-person session, the training was moved to a virtual Zoom format, and Defendant Ory replaced Defendant Stampp as the facilitator.

42. Before the training, Washington University distributed a pre-session survey through Qualtrics (an online survey platform).

43. The survey required participants to self-identify their race using a binary choice: "BIPOC" (Black, Indigenous, People of Color) or "White."

44. Survey responses were used to assign participants to racially segregated breakout rooms.

45. On October 9, 2024, Ms. Thaier contacted ODEI's department coordinator, Yoko Kiyoi, to express concerns about being the sole BIPOC participant on her team.

46. Kiyoi relayed these concerns to Defendant Stampp.

47. On October 24, 2024, Defendant Stampp emailed Ms. Thaier to acknowledge her concerns and offer three options: (a) the shared identity space activity would not take place, and participants would instead be placed in small

groups of approximately five to seven people for the session; (b) additional BIPOC "equity champions" could join the session so that Ms. Thaier would not be alone; or (c) Ms. Thaier could meet separately with a facilitator on a different date to go through the content and then join the group at a later phase.

48. On November 1, 2024, Ms. Thaier responded that she preferred the first option, understanding it to mean that the group would not participate in the racial caucusing component and would otherwise proceed with the remainder of the training.

49. On January 22, 2025, the training proceeded, and the shared identity space was not eliminated despite Ms. Thaier's selection of the first option.

50. Defendant Ory told participants that he thought the session would include only white participants.

51. Defendant Ory nonetheless created two breakout rooms, one labeled "BIPOC" and the other labeled "White."

52. Ms. Thaier was the only BIPOC participant.

53. Ms. Thaier was placed alone in the "BIPOC" room, while her white colleagues were grouped together in the "White" room.

54. Ms. Thaier remained alone in the breakout room until Defendant Ory summoned a Black ODEI team member, who was not participating in the training, to join her.

55. Ms. Thaier then left the training session.

56. Shortly thereafter, Defendant Ory emailed Ms. Thaier, apologizing for "today's mistake."

57. Multiple participants in the training witnessed Ms. Thaier's segregation and exclusion, observed the disparate treatment she received, and discussed it during and after the session.

### III. Ms. Thaier's Report, Internal Complaint, and Washington University's Response

58. On January 22, 2025, the same day as the training, Ms. Thaier reported the incident to ODEI leadership and her supervisors.

59. Ms. Thaier described the experience as "egregious" and "dehumanizing," writing: "In 2025, in this political and social climate, the only black/BIPOC person was literally and figuratively segregated and asked to leave the 'room.' It's egregious." She described being left "sobbing on the floor," "derailed for the entire day," and "struggling" to pull herself together to be present for her children.

60. Ms. Thaier reminded the recipients that she had raised this concern months earlier when the activity was initially scheduled, and that an accommodation had been agreed upon specifically to prevent this outcome.

61. Defendant Stampp did not respond to Ms. Thaier for eight days.

62. On January 30, 2025, Defendant Stampp characterized the incident as a "miscommunication."

63. In the same email, Defendant Stampp defended the practice of separating participants by race, stating that "[s]hared identity spaces are an important part of anti-racism work."

64. On January 31, 2025, Ms. Thaier filed a formal complaint with Washington University's Office of Institutional Equity ("OIE").

65. Gillian Boscan, OIE's Director of Investigations, confirmed receipt and initiated an investigation.

66. Ms. Thaier alleged that ODEI, led by Defendant Stampp, "created an ecosystem that delivers training in a manner inconsistent with its mission and the university's commitment to diversity, equity, and inclusion."

67. Ms. Thaier further characterized the subsequent communications from Defendants Stampp and Ory as "racelighting."

68. On April 3, 2025, Ms. Boscan informed Ms. Thaier that OIE had recommended discontinuing "racial caucusing" in future trainings, particularly when participation was involuntary and involved a small group, indicating it was mandatory.

69. OIE investigated Ms. Thaier's complaint from approximately February through June 2025. The investigation was closed without formal resolution or corrective action.

70. The Qualtrics survey used to racially classify employees remains live and publicly accessible on Washington University's website as of the date of this filing. *See* Exhibit D; *see also* https://perma.cc/D86T-C835.

71. On July 11, 2025, Ms. Thaier signed and filed a Charge of Discrimination with the Commission.

72. On or about July 20, 2025, the Commission provided Washington University with formal notice of Ms. Thaier's Charge of Discrimination.

73. On or about July 30, 2025, Ms. Thaier informed Beers that she had filed a Charge of Discrimination with the Commission.

74. On August 27, 2025, Washington University submitted its Position Statement to the Commission.

75. Washington University acknowledged that the training program was designed to include "shared identity breakout sessions" in which participants would be separated into groups based on race.

76. Washington University admitted that, before the date of the training, the organizers learned that Ms. Thaier would be "the only African American employee in her breakout session."

## IV. Adverse Employment Actions and Retaliation

77. From September 2 to October 21, 2025, Ms. Thaier took approved leave under the FMLA for the psychological harm caused by the January 2025 incident and Washington University's subsequent response.

78. Ms. Thaier required ongoing psychiatric treatment for the psychological harm caused by the January 2025 incident and Washington University's subsequent response.

79. On October 1, 2025, while Ms. Thaier was on leave, Defendant Fisher issued a department-wide communication.

80. Defendant Fisher stated: "Our budget in Siteman is as stable and secure as ever. If new challenges come, we will adapt, but I foresee no changes to our operations on the horizon. NO staffing changes, reductions, or adjustments are even being considered, let alone planned, in our department."

81. Prior to her FMLA leave, Ms. Thaier had been designated to cross-train on one of the department's highest-priority projects: the NCI Cancer Center Support Grant ("CCSG") renewal application, due in September 2026.

82. In June 2025, Defendant Fisher assigned Ms. Thaier to develop and lead the Clinical Trials Initiative—a program to foster and facilitate research projects that could be submitted to SCC's Protocol Development team for regulatory approval, with the ultimate goal of increasing clinical trial accruals prior to the NCI renewal deadline in September 2026.

83. The CCSG cross-training was paused while the Clinical Trials Initiative launched, with the understanding that it would resume once the launch phase stabilized.

84. The Clinical Trials Initiative required Ms. Thaier to work directly with faculty investigators to identify and develop clinical trial proposals.

85. At no point was Ms. Thaier informed that she had been removed from the CCSG plan.

86. On July 31, 2025, Ms. Thaier provided Defendant Fisher with a detailed progress report on the Clinical Trial Initiative, identifying multiple active faculty collaborations and pending study proposals.

87. Ms. Thaier wrote: “I feel like this is working, I just wish we would have started it a year ago.”

88. Defendant Fisher responded: “I agree 1000%. It IS working! I just got you started way too late. The good news – if this works, we will sustain in perpetuity, so all of the work will be worthwhile.”

89. Defendant Fisher required weekly in-person progress reports from Ms. Thaier on the Clinical Trials Initiative through August 2025.

90. That cadence was discontinued when Ms. Thaier went on leave and was never resumed upon her return.

91. On August 25, 2025—one week before Ms. Thaier’s FMLA leave began—Defendant Fister emailed Ms. Thaier regarding the Clinical Trials Initiative: “Courtney and I are working up a new strategy for funding trials like these. If it works, it will be long term and sustainable.”

92. In the same email, Defendant Fisher directed Courtney Beers, Director of Research Operations and Ms. Thaier’s direct supervisor, to “loop Meg in on what we are thinking.”

93. Ms. Thaier returned to work on October 22, 2025.

94. Upon her return, Ms. Thaier asked for updates on her projects and whether she should begin cross-training on the CCSG renewal application as previously planned.

95. Ms. Thaier received no response.

96. On or around November 12, 2025, Courtney Beers informed Ms. Thaier that her position was being eliminated.

97. Beers told Ms. Thaier there was not enough work for her and that she should begin looking for other opportunities.

98. In a follow-up conversation, Beers admitted that Ms. Thaier had "done a great job."

99. Beers stated that the Clinical Trials Initiative was "wildly successful."

100. Beers stated that the decision to eliminate Ms. Thaier's position was "not a quality of work" issue.

101. Beers stated that, while Ms. Thaier was on FMLA leave, department leadership reassigned all grant components, including those previously designated for Ms. Thaier.

102. Beers stated that "the planning work happened while you were out in September."

103. Beers characterized Ms. Thaier's position as a "luxury" the department could no longer "afford."

104. On or around November 13, 2025, a white female colleague, Carrie Wehking, was promoted from Program Manager to Senior Program Manager, the same title Ms. Thaier held.

105. Upon information and belief, Ms. Wehking reported to the same executive director as Ms. Thaier and assumed many of Ms. Thaier's former responsibilities.

106. On November 20, 2025, Defendant Fisher sent Ms. Thaier a termination email characterizing the separation as a "position elimination" due to reduced need for her role, a shift in strategic priorities, and financial and operational considerations.

107. Defendant Fisher wrote: "Please know that this difficult decision is not a reflection on you, but rather on the nature of your position and the current priorities and finances of SCC. You are a valued colleague and have performed well, and we truly wish you all the best."

108. Defendant Fisher set Ms. Thaier's last day of employment as December 1, 2025.

109. Washington University offered Ms. Thaier a severance agreement with an acceptance deadline of December 5, 2025.

110. The agreement required Ms. Thaier to release all claims against the university, including Title VII claims, and required Ms. Thaier to waive "any and all right to any personal monetary recovery" related to her employment or its termination.

111. Ms. Thaier declined to sign the agreement.

112. On December 1, 2025, Defendant Fisher emailed a colleague acknowledging that "Meg did a great job encouraging faculty and helping them develop ideas for new trials" and that "there is still tremendous support for the development of new clinical trials."

113. Prior to FMLA leave, Ms. Thaier was actively leading the expansion of clinical trials, coordinating investigators, shaping accrual strategy, maintaining ongoing faculty collaborations, and developing infrastructure explicitly tied to the NCI's CCSG renewal application.

114. Just weeks before informing Ms. Thaier that her role would be eliminated, leadership issued a department-wide message stating that no staffing changes or reductions were being considered and that the budget was stable and secure.

115. Upon information and belief, Ms. Thaier was the only employee in her department whose position was eliminated at that time.

116. At all relevant times, Defendants acted with malice or reckless indifference to Ms. Thaier's rights.

## **STATEMENT OF CLAIMS**

### COUNT I
### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Against Washington University)

117. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

118. Title VII prohibits employers from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of such individual's race. 42 U.S.C. § 2000e-2(a)(1).

119. Washington University discriminated against Ms. Thaier on the basis of her race, African American, by:

a. Requiring Ms. Thaier to self-identify her race as a condition of participation in a mandatory workplace training;

b. Segregating Ms. Thaier from her white colleagues into a separate breakout room based solely on her race;

c. Isolating Ms. Thaier alone in a breakout room because she was the only Black participant;

d. Subjecting Ms. Thaier to different terms and conditions of employment than her white colleagues, who attended and completed the mandatory training while she was excluded;

e. Terminating Ms. Thaier's employment under pretextual circumstances while simultaneously promoting a white female colleague to the same title.

120. Title VII further makes it unlawful for an employer "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(2). Washington University violated this provision by requiring Ms. Thaier to classify

herself by race and by segregating her from her white colleagues during the mandatory training.

121. Ms. Thaier's race was a motivating factor in the adverse employment actions taken against Ms. Thaier, within the meaning of 42 U.S.C. § 2000e-2(m).

122. As a direct and proximate result of Washington University's unlawful race discrimination, Ms. Thaier has suffered damages, including, but not limited to, lost wages and benefits, emotional distress, humiliation, loss of enjoyment of life, and other compensable harm, and is entitled to relief under Title VII.

**COUNT II**
**Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Against Washington University)**

123. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

124. Title VII prohibits employers from subjecting employees to a hostile work environment because of race.

125. Washington University subjected Ms. Thaier to unwelcome conduct because of her race that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

126. Specifically, Washington University engaged in the following conduct:

a. Requiring Ms. Thaier to self-identify her race through a Qualtrics survey offering only a binary choice of "BIPOC" or "White" as a precondition to participation in a mandatory workplace training;

b. Failing to eliminate the shared identity space activity after Defendant Stampp offered that option and Ms. Thaier selected it;

c. Failing to implement any accommodation for Ms. Thaier when the training was reassigned to a substitute facilitator;

d. Segregating Ms. Thaier into a separate breakout room during the training solely because of her race;

e. Isolating Ms. Thaier while her white colleagues participated together;

f. Summoning a Black ODEI team member, who was not participating in the training, to join her;

g. Characterizing Ms. Thaier's presence at the training as a "mistake" and dismissing the segregation as a mere "miscommunication;"

h. Failing to take prompt and effective remedial action to address the hostile environment created by the discriminatory training, including leaving the OIE investigation unresolved at the time of Ms. Thaier's termination.

127. Washington University knew or should have known of the hostile and discriminatory conditions to which Ms. Thaier was subjected.

128. Washington University did not discipline or reassign the employees responsible for the segregated training.

129. Under the totality of the circumstances, the conduct Ms. Thaier experienced was both severe and pervasive.

130. Washington University's conduct caused Ms. Thaier to suffer physical and emotional ailments and fundamentally altered the conditions of her employment.

131. The hostile work environment culminated in the retaliatory elimination of Ms. Thaier's position.

132. As a direct and proximate result of Washington University's creation and maintenance of a hostile work environment, Ms. Thaier has suffered damages and is entitled to relief under Title VII.

**COUNT III**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (Against Washington University)**

133. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

134. Title VII prohibits employers from retaliating against an employee because she has opposed any practice made unlawful by Title VII or because she has filed a charge, testified, assisted, or participated in any investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

135. Ms. Thaier engaged in protected activity on multiple occasions, including but not limited to:

a. Reporting the racially discriminatory training to ODEI and university leadership on January 22, 2025;

b. Filing a formal complaint with Washington University's Office of Institutional Equity on January 31, 2025;

c. Filing a Charge of Discrimination with the Commission and the Missouri Commission on Human Rights on July 11, 2025;

d. Submitting a detailed rebuttal to Washington University's Position Statement to the Commission on August 29, 2025;

e. Submitting an addendum to her rebuttal on September 4, 2025;

f. Filing an Amended Charge of Discrimination on November 25, 2025.

136. Following Ms. Thaier's protected activities, Washington University took materially adverse employment actions against her, including but not limited to:

a. Reducing and reassigning her responsibilities;

b. Excluding her from ongoing projects;

c. Failing to respond to her requests for work upon her return from leave;

d. Eliminating her position effective December 1, 2025;

e. Offering a severance agreement that required a broad waiver of all legal claims as a condition of receiving separation benefits;

f. Failing to provide Ms. Thaier with the minimum 30 days' notice and transfer assistance guaranteed by her employment agreement.

g. Setting a termination date that gave Ms. Thaier approximately nineteen days' notice, including the Thanksgiving holiday week.

137. Ms. Thaier's protected activities were a but-for cause of the adverse employment actions taken against her by Defendants.

138. Ms. Thaier's termination occurred three weeks after her return from FMLA leave.

139. Washington University's stated justification for eliminating Ms. Thaier's position is pretextual and inconsistent with contemporaneous written communications from leadership.

140. As a direct and proximate result of Washington University's unlawful retaliation, Ms. Thaier has suffered damages and is entitled to relief under Title VII.

**COUNT IV**
**Race Discrimination in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

141. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

142. Section 1981 of Title 42 of the United States Code provides that all persons shall have the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by white citizens. 42 U.S.C. § 1981(a), (b).

143. Ms. Thaier's employment relationship with Washington University constituted a contractual relationship within the meaning of Section 1981.

144. Washington University, through its agents, intentionally discriminated against Ms. Thaier because of her race.

145. Washington University racially segregated Ms. Thaier during a mandatory training.

146. Washington University subjected Ms. Thaier to different terms and conditions of employment under circumstances indicating racial animus.

147. Defendant Stampp designed the racially segregated training.

148. Defendant Stampp knew in advance that Ms. Thaier would be the only BIPOC participant.

149. Defendant Stampp assigned a substitute facilitator without ensuring that Ms. Thaier's agreed-upon accommodation would be implemented.

150. Defendant Stampp characterized the incident as a "miscommunication" and delayed responding to Ms. Thaier's report of harm for eight days.

151. Race was a but-for cause of the actions Defendant Stampp took and directed against Ms. Thaier.

152. Defendant Ory facilitated the January 22, 2025, training session and carried out the racial segregation of participants into breakout rooms.

153. Defendant Ory stated that he had thought the group would be all white.

154. Defendant Ory characterized Ms. Thaier's presence in the session as a "mistake."

155. Race was a but-for cause of Defendant Ory's actions against Ms. Thaier.

156. Defendant Fisher eliminated Ms. Thaier's position.

157. A white female colleague was simultaneously promoted to the same title Ms. Thaier held.

158. Race was a but-for cause of the adverse actions Defendant Fisher took against Ms. Thaier.

159. The racial segregation of Ms. Thaier during the mandatory training was not accidental or inadvertent.

160. The training was designed to separate participants by race as its central feature.

161. Race was a but-for cause of Ms. Thaier's isolation and exclusion.

162. As a direct and proximate result of Defendants' intentional race discrimination, Ms. Thaier has suffered damages and is entitled to relief under 42 U.S.C. § 1981, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT V**
**Retaliation in Violation of 42 U.S.C. § 1981**
**(Against Washington University and Fisher)**

163. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

164. Section 1981 protects individuals from retaliation for opposing racial discrimination or for asserting their rights under the statute.

165. Ms. Thaier engaged in protected activity by opposing the racially discriminatory training, filing internal complaints, filing charges with the Commission and the Missouri Commission on Human Rights, and otherwise asserting her rights under federal anti-discrimination law.

166. Washington University and Defendant Fisher retaliated against Ms. Thaier for her protected activity.

167. The retaliatory acts included reducing her responsibilities, excluding her from projects, and terminating her employment, as more fully described above.

168. Defendant Fisher was the decision-maker who eliminated Ms. Thaier's position.

169. Defendant Fisher authored the termination letter.

170. Defendant Fisher took these actions with knowledge of Ms. Thaier's protected activity.

171. Ms. Thaier's protected activity was a but-for cause of Defendant Fisher's adverse actions.

172. As a direct and proximate result of Defendants' unlawful retaliation, Ms. Thaier has suffered damages and is entitled to relief under 42 U.S.C. § 1981.

**COUNT VI**
**Interference and Retaliation in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615 (Against Washington University)**

173. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

174. The Family Medical Leave Act ("FMLA") entitles eligible employees to take up to twelve weeks of leave during a twelve-month period for a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(D).

175. The FMLA also prohibits employers from interfering with, restraining, or denying the exercise of rights under the FMLA. 29 U.S.C. § 2615(a)(1).

176. It likewise prohibits employers from retaliating against employees for exercising their FMLA rights. 29 U.S.C. § 2615(a)(2).

177. Ms. Thaier was eligible for FMLA leave and took approved continuous FMLA leave from September 2, 2025, through October 21, 2025, for a serious health condition attributed to "workplace racism."

178. While on FMLA leave, Washington University reassigned all of Ms. Thaier's job duties to other employees, with no intention of reassigning them when she returned.

179. When Ms. Thaier returned from FMLA leave, her job duties were not reassigned.

180. Washington University terminated Ms. Thaier's employment three weeks after she returned from FMLA leave.

181. Washington University interfered with Ms. Thaier's FMLA rights by using her FMLA leave as the occasion to eliminate her from her role.

182. Washington University failed to restore Ms. Thaier to her position or an equivalent position upon her return.

183. Washington University retaliated against Ms. Thaier for exercising her FMLA rights.

184. As a direct and proximate result of Washington University's violations of the FMLA, Ms. Thaier has suffered damages, including lost wages, lost benefits, and other compensation denied or lost by reason of the violation, and is entitled to

liquidated damages, equitable relief, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2617.

## COUNT VII
## Race Discrimination in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055 (Against Washington University)

185. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

186. The Missouri Human Rights Act prohibits employers from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of such individual's race. Mo. Rev. Stat. § 213.055.

187. At all relevant times, Defendants Stampp, Ory, and Fisher acted as agents and employees of Washington University within the scope of their employment. Their conduct, as described herein, is attributable to Washington University.

188. Washington University discriminated against Ms. Thaier on the basis of her race, African American, by:

a. Requiring Ms. Thaier to self-identify her race as a condition of participation in a mandatory workplace training;

b. Segregating Ms. Thaier from her white colleagues into a separate breakout room based solely on her race;

c. Isolating Ms. Thaier alone in a breakout room because she was the only Black participant;

d. Imposing different terms and conditions of a mandatory workplace training on Ms. Thaier than her white colleagues, despite Ms. Thaier's objection and selection of an option that would have applied uniformly to all participants;

e. Terminating Ms. Thaier's employment while simultaneously promoting a white female colleague to the same title.

189. Washington University, through Defendant Stampp, designed, directed, and oversaw the racially segregated training that formed the basis of the discriminatory treatment, and failed to ensure the shared identity space was eliminated despite Ms. Thaier's selection of that option.

190. Washington University, through Defendant Ory, facilitated the training session, personally created the racially segregated breakout rooms, carried out the segregation of participants, and characterized Ms. Thaier's presence as a "mistake."

191. Washington University, through Defendant Fisher, eliminated Ms. Thaier's position while a white colleague was promoted to the same title, and issued a termination email citing financial and operational justifications that contradicted his prior written assurances.

192. Ms. Thaier's race was the motivating factor in the adverse employment actions taken against her by Washington University, within the meaning of Mo. Rev. Stat. § 213.010(19).

193. Ms. Thaier's race actually played a role in and had a determinative influence on Washington University's decision to segregate her during the mandatory training and to terminate her employment.

194. As a direct and proximate result of Washington University's violations of the MHRA, Ms. Thaier has suffered damages and is entitled to compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT VIII**
**Hostile Work Environment in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055 (Against Washington University)**

195. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

196. The MHRA prohibits employers from subjecting employees to a hostile work environment because of race. Mo. Rev. Stat. § 213.055.

197. Washington University subjected Ms. Thaier to unwelcome conduct because of her race that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

198. At all relevant times, Defendants Stampp, Ory, and Fisher acted as agents and employees of Washington University within the scope of their employment. Their conduct, as described herein, is attributable to Washington University.

199. Washington University knew or should have known of the hostile and discriminatory conditions to which Ms. Thaier was subjected.

200. Washington University did not discipline or reassign the employees responsible for the segregated training.

201. Under the totality of the circumstances, the conduct Ms. Thaier experienced was both severe and pervasive.

202. Washington University's conduct caused Ms. Thaier to suffer physical and emotional ailments and fundamentally altered the conditions of her employment.

203. The hostile work environment culminated in the retaliatory elimination of Ms. Thaier's position.

204. Ms. Thaier's race was the motivating factor in the hostile work environment to which she was subjected, within the meaning of Mo. Rev. Stat. § 213.010(19).

205. Ms. Thaier's race actually played a role in and had a determinative influence on the hostile and discriminatory conditions to which she was subjected.

206. As a direct and proximate result of Washington University's creation and maintenance of a hostile work environment in violation of the MHRA, Ms. Thaier has suffered damages and is entitled to compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT IX
## Retaliation in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.070 (Against Washington University)

207. Plaintiff-Intervenor realleges and incorporates by reference all preceding paragraphs of this Complaint in Intervention.

208. The MHRA prohibits employers from retaliating against an individual because she has opposed any practice prohibited by the MHRA or because she has filed a charge, testified, assisted, or participated in any proceeding under the MHRA. Mo. Rev. Stat. § 213.070.1(2).

209. At all relevant times, Defendant Fisher acted as an agent and employee of Washington University within the scope of his employment. His conduct, as described herein, is attributable to Washington University.

210. Ms. Thaier engaged in protected activity under the MHRA by opposing Washington University's racially discriminatory conduct, filing internal complaints, and filing charges of discrimination with the Commission and the Missouri Commission on Human Rights.

211. Washington University retaliated against Ms. Thaier by taking materially adverse employment actions, including reducing her responsibilities, excluding her from projects, and terminating her employment, as more fully described above.

212. Washington University, through Defendant Fisher, participated in and executed the decision to eliminate Ms. Thaier's position with knowledge of her protected activity, authored the termination letter, and transmitted to Ms. Thaier a severance offer that required her to release all claims against Washington University, including Title VII claims, as a condition of receiving separation benefits.

213. Ms. Thaier's protected activity was the motivating factor in the adverse employment actions taken against her by Washington University, within the meaning of Mo. Rev. Stat. § 213.010(19).

214. Ms. Thaier's protected activity actually played a role in, and had a determinative influence on, Washington University's decision to reduce her responsibilities, exclude her from projects, and terminate her employment.

215. As a direct and proximate result of Washington University's violations of the MHRA, Ms. Thaier has suffered damages and is entitled to compensatory damages, punitive damages, attorneys' fees, and costs.

## PRAYER FOR RELIEF

216. Ms. Thaier respectfully requests that this Court enter judgment in her favor and against Defendants Washington University, Erin Stampp, Jeramia Ory, and Nicholas Fisher, and award the following relief:

a. A declaratory judgment that Defendants' actions, as described herein, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the FMLA, and the MHRA;

b. Compensatory damages for lost wages, back pay, front pay, lost employee benefits, including Washington University's tuition remission benefit for dependent children, and other benefits, in an amount to be proven at trial;

c. Compensatory damages for emotional pain and distress, mental anguish, humiliation, loss of enjoyment of life, and other non-economic harm, in an amount to be proven at trial;

d. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

e. Punitive damages in an amount sufficient to punish Defendants and deter future violations of law;

f. Pre-judgment and post-judgment interest as allowed by law;

g. Reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, 29 U.S.C. § 2617(a)(3), and Mo. Rev. Stat. § 213.111;

h. Injunctive and equitable relief as this Court deems just and proper; and

i. Any other relief that this Court deems just and equitable.

**JURY DEMAND**

Plaintiff-Intervenor hereby requests a trial by jury on all questions of fact raised in her Complaint.

Dated: August 12, 2026

Respectfully submitted,

*/s/ Megan D. Redshaw*
Megan D. Redshaw
Bar No. 74272 (MO)
Nicholas R. Barry*
Bar No. 31963 (TN)
Crystal Clanton*
Bar No. 1746D29O (AL)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C., 20003
Phone: (301) 887-3704
megan.redshaw@aflegal.org
nicholas.barry@aflegal.org
crystal.clanton@aflegal.org

Michael Martinich-Sauter (MO66065)
Peter T. Reed (MO70756)
Daniel C. Carter (MO73657)
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
Phone: (314) 949-3018
michael.martinich-sauter@james-otis.com
peter.reed@james-otis.com
daniel.carter@james-otis.com

*Attorneys for the Plaintiff-Intervenor*

**Pro hac vice* application forthcoming

# EXHIBIT A

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
**MISSOURI COMMISSION ON HUMAN RIGHTS**

| | | | |
|---|---|---|---|
| MIKE KEHOE<br>GOVERNOR | ANNA S. HUI<br>DEPARTMENT DIRECTOR | BRITTANY SOUTHWORTH<br>ACTING CHAIR | SHANNON THOMPSON<br>ACTING EXECUTIVE DIRECTOR |

May 19, 2026

Amega L Thaier
6119 Terri Lynn Dr
Saint Louis, MO 63123
Via Complainant Attorney Email: Megan.redshaw@aflegal.org

**NOTICE OF RIGHT TO SUE**

RE: Amega L Thaier VS. Washington University, FE-11/25-40524; 560-2025-01453

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue from MCHR and/or the Equal Employment Opportunity Commission (EEOC) with whom this matter was dual filed.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri. Any such petition must be filed in the Circuit Court of Cole County.

(CONTINUED ON NEXT PAGE)

*The Missouri Commission on Human Rights is an equal opportunity employer/program.*
*Auxiliary aides and services are available upon request to individuals with disabilities.*

TDD/TTY: 1-800-735-2966 • Relay Missouri: 711 • www.labor.mo.gov/discrimination • Email: mchr@labor.mo.gov

RE: Amega L Thaier VS. Washington University
FE-11/25-40524; 560-2025-01453

Respectfully,

*Shannon Thompson*

Shannon Thompson
Acting Executive Director

CC:
Washington University
Academic Department
1 Brookings Drive
St. Louis, MO 63130
*Via Respondent Attorney/Contact Email*

Joseph Sklansky
Assistant Vice Chancellor & Associate General Counsel, Washington University in St. Louis
Washington University-St. Louis
One Brooking Drive - Campus Box 1058
St. Louis, MO 63130
joseph_sklansky@wustl.edu

Megan Redshaw
611 Pennsylvania Ave Suite 231
Washington, DC 20003
Megan.redshaw@aflegal.org

# EXHIBIT B

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**St. Louis District Office**

Robert A. Young Building
1222 Spruce Street, Room 8.100
St. Louis, MO 63103
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
St. Louis Direct Dial: (314) 798-1960
FAX (314) 539-7894
Website: www.eeoc.gov

Mrs. Amega L. Thaier
6119 Terri Lynn Dr
Saint Louis, MO 63123
Charging Party

Charge No.: 560-2025-01453

Washington University
One Brookings Drive
Saint Louis, MO 63130
Respondent

**DETERMINATION**

On behalf of the Commission, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964 (Title VII), as amended. Respondent is an employer within the meaning of Title VII, and timeliness, deferral, and all other requirements for coverage have been met.

Charging Party alleges that beginning in or around October 2024, Respondent subjected her to discriminatory treatment based on her race, Black, and that the discriminatory treatment created a hostile work environment based on race. Charging Party further alleges that Respondent terminated her employment in the fall of 2025 in retaliation for her opposition to the discriminatory treatment, for her participation in an EEO process, and because she used leave for conditions related to the discriminatory treatment.

Respondent denies Charging Party's allegations and states that it eliminated Charging Party's position for legitimate non-discriminatory reasons.

Documentary and testimonial evidence obtained during the Commission's investigation supports Charging Party's allegations. Based on that evidence, I find that there is reasonable cause to believe Respondent violated Title VII, when it subjected Charging Party to discriminatory treatment because of her race beginning in or around October 2024, when it subjected her to a hostile work environment based on race, and when it terminated her employment in the fall of 2025 in retaliation for her opposition to the discriminatory treatment, for her participation in an EEO process, and because she used leave for conditions related to the discriminatory treatment.

Upon finding a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of the statute and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Commission is not obtained, I will inform the parties and advise them of the court

enforcement alternative available to aggrieved persons and the Commission. If you wish to participate in conciliation, please contact Jill Berkland, Equal Opportunity Investigator, at Jill.Berkland@eeoc.gov within 5 days from the date this Determination was issued.

On Behalf of the Commission:

DAVID DAVIS Digitally signed by DAVID DAVIS Date: 2026.06.22 16:12:27 -05'00'

June 22, 2026
Date

David Davis
District Director

# EXHIBIT C

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

Mrs. Amega L. Thaier
6119 Terri Lynn Dr
Saint Louis, MO 63123

Washington University
One Brookings Drive
Saint Louis, MO 63130

Via EEOC Portal

Re: Mrs. Amega L. Thaier v. Washington University
EEOC Charge Number: 560-2025-01453

The Commission has determined that efforts to conciliate this charge as required by Title VII of the Civil Rights Act of 1964 (Title VII) have been unsuccessful. This letter is the notice required by §1601.25 of the Commission's Regulations, which provides that the Commission shall notify a Respondent in writing when it determines that further conciliation efforts would be futile or non-productive. No further efforts to conciliate this case will be made.

Accordingly, this case is now being forwarded to our legal unit for possible litigation.

On Behalf of the Commission:

Digitally Signed By:David Davis
07/01/2026

David Davis
District Director

cc: Via Email

Nicholas Barry, Esq.
America First Legal

Megan Redshaw, Esq.
America First Legal

Joseph Sklansky, Esq.
Washington University

# EXHIBIT D

WashU

Please share your first and last name.

Please select what best describes your professional role on campus.

- ◯ Staff
- ◯ Trainee (Residents and Fellows)
- ◯ Faculty

In this session we will spend time in shared racial identity spaces. Please select which racial identity below that most represents your racial identity.

- ◯ BIPOC - Black, Indigenous, People of Color
- ◯ White

https://washu.qualtrics.com/jfe/form/SV_8bNo9F62BdtP56m

7/11/25, 8:18 PM
Page 1 of 2